UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MAX CULLINAN,<br><br>                             Plaintiff,<br><br>-against-<br><br>NEW PROVIDENCE ACQUISITION CORP.,<br>GARY P. SMITH, ALEXANDER<br>COLEMAN, TIMOTHY GANNON, DANIEL<br>GINSBERG, and RICK MAZER,<br><br>                             Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Max Cullinan ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought by Plaintiff against New Providence Acquisition Corp. ("NPA" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with NPA, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between NPA and AST & Science LLC ("AST"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2.      On December 15, 2020, NPA entered into an Equity Purchase Agreement (the "Equity Purchase Agreement"), pursuant to which NPA will pay cash consideration and issue shares of its stock to holders of AST (the "Merger Consideration"). The post-merger combined

1

company will continue to operate as "AST SpaceMobile, Inc." and trade on the Nasdaq under the ticker symbol "ASTS". After the closing of the Proposed Merger, NPA's current common stockholders will only retain an ownership interest of approximately 2.6% in a post-combination controlled company that is not expected to generate revenue until 2023.

3.        On January 27, 2021, in order to convince NPA shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the SEC in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of disclosure.

4.        In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the process and background of the Proposed Merger; and (ii) the financial advisors employed by the Company including, BTIG, LLC ("BTIG"), Deutsche Bank Securities Inc. ("DB"), and Barclays Capital Inc. ("Barclays").

5.        The special meeting of NPA shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote").  It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6.        For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to NPA's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of disclosure.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to Section 27 of the

Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff

alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      The Court has supplemental jurisdiction over the state law claim for breach of the

duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9.      Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over the Defendants by this Court permissible

under traditional notions of fair play and substantial justice. "Where a federal statute such as

Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes

whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r*

*Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum

contacts with the United States, Section 27 of the Act confers personal jurisdiction over the

defendant in any federal district court." *Id.* At 1316

10.     Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C.

§ 1391, because Defendants are found or are inhabitants or transact business in this District.

Indeed, NPA's common stock trades on The Nasdaq Capital Market, which is headquartered in

this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347

F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of NPA common stock.

12.     Defendant NPA is a blank check company formed in order to effect a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or other similar business combination with one or more businesses or entities. The Company is a Delaware corporation and its common stock trades on the Nasdaq under the ticker symbol "NPA".

13.     Individual Defendant Gary P. Smith has been the Chief Executive Officer ("CEO") and a director of the Company at all relevant times.

14.     Individual Defendant Alexander Coleman has been, at all relevant times, the Chairman of the Board of Directors.

15.     Individual Defendant Timothy Gannon has served as director of the Company at all relevant times.

16.     Individual Defendant Daniel Ginsberg has served as director of the Company at all relevant times.

17.     Individual Defendant Rick Mazer has served as director of the Company at all relevant times.

18.     The Individual Defendants referred to in ¶¶ 13-17 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with NPA they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

I.     **Background and the Proposed Merger**

19.     NPA is a blank check company. The Company is formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses. The Company intends to acquire and operate a business in the consumer industry.

20.     AST is a satellite designer and manufacturer, headquartered in Midland, Texas. AST operates from five locations that include its corporate headquarters and 85,000 square foot satellite assembly, integrating and testing facility in Midland, Texas, and development offices located in Maryland, Spain, and Israel.  AST also has a controlled subsidiary, Nano, located in Lithuania. AST is controlled by Abel Avellan, its Chairman and CEO, who owns 100% of the Class C common stock and will control 86.6% of the voting power of SpaceMobile upon the completion of the Proposed Merger.

21.     On December 16, 2020, AST and NPA issued a joint press release announcing the Proposed Merger, which states in relevant part:

**AST & Science LLC to Become Public Company Through Combination with New Providence Acquisition Corp. (NASDAQ: NPA, NPAUU and NPAWW)**

- AST & Science LLC ("AST SpaceMobile") is building the first and only space-based cellular broadband network accessible directly by standard mobile phones
- AST SpaceMobile to become publicly listed through a business combination with New Providence Acquisition Corp. (NASDAQ: NPA, NPAUU and NPAWW)
- Combined company to have an estimated post-transaction enterprise value of $1.4 billion and will become listed on the NASDAQ under the ticker symbol "ASTS" following expected transaction close in the first quarter of 2021
- Transaction to provide up to $462 million in gross proceeds, comprised of New Providence Acquisition Corp.'s $232 million of cash held in trust (assuming no redemptions) and a $230 million fully committed common stock PIPE at $10.00 per share, including investments from Rakuten, Vodafone, American Tower, UBS O'Connor and a broad base of financial institutions
- AST SpaceMobile LLC shareholders Vodafone, Rakuten, American Tower, and Cisneros will increase their equity holding through participation in the PIPE financing in support of AST SpaceMobile's transition into the publicly listed company

MIDLAND, TX— December 16, 2020 – AST & Science LLC ("AST SpaceMobile"), the company building the first and only space-based cellular broadband network accessible directly by standard mobile phones, today announced it has entered into a business combination agreement with New

Providence Acquisition Corp. ("New Providence") (NASDAQ: NPA, NPAUU and NPAWW), a publicly traded special purpose acquisition company. Upon closing of the transaction, AST SpaceMobile will become a publicly traded company, and it is expected that its common stock will be listed on the NASDAQ exchange under the symbol "ASTS" upon closing the transaction. Abel Avellan, Chairman and Chief Executive Officer of AST SpaceMobile, will continue to lead the business post-transaction. The combined company will have an implied pro forma enterprise value of approximately $1.4 billion and is expected to have an equity value of approximately $1.8 billion at closing.

Backed by an extensive IP and patent portfolio, AST SpaceMobile will uniquely address the $1 trillion global mobile wireless services market by delivering seamless broadband cellular connectivity directly to unmodified, existing mobile phones, without any need for specialized hardware. With an expected initial access to 1.3 billion subscribers of some of the world's largest cellular operators, AST SpaceMobile will be positioned to rapidly scale its revenue streams as it deploys its space assets for nearly complete global coverage, while benefitting from operating leverage and low maintenance capital costs via its super-wholesale, business-to-business model.  Once deployed, AST SpaceMobile's services will meet the needs of at least five billion mobile subscribers who face broadband connectivity issues when moving in and out of cellular coverage, and will enable access by more than half of the world population that do not have internet on their phone.

AST SpaceMobile and New Providence have secured a commitment for a $230 million private placement investment ("PIPE") to be consummated at the closing of the transaction. The PIPE is being led by AST SpaceMobile's strategic partners, including Vodafone, Rakuten (Japan leader in e-commerce, fintech, digital content and communications), and American Tower (a global leader in communications infrastructure), as well as UBS O'Connor and a broad base of financial institutions.

"AST SpaceMobile's low latency, space-based platform will allow hundreds of millions of people across the world to access high-speed, cellular broadband service in areas where there was previously no such service. Working directly with our strategic partners, we are on track in executing on phase one of our commercial launch as we set the stage to bring our game-changing space network for global mobile connectivity," said Abel Avellan, Chairman and Chief Executive Officer of AST SpaceMobile.

"Universal broadband access has become a global necessity, and we are uniquely positioned to leverage our innovative technology solution and efficient business model to democratize broadband cellular access across the globe," Mr. Avellan continued. "Building on the strong investor support we have received in the private markets, we are thrilled to partner with New Providence and transition AST SpaceMobile to a public company, which will solidify our financial profile as we continue to execute on our vision."

"AST SpaceMobile represents a unique opportunity to invest in a pioneering company with revolutionary technology, access to a built-in customer base, and a flexible and scalable business model that addresses one of the largest challenges to global connectivity," said Alex Coleman, Chairman of New Providence. "Facing an extraordinary market opportunity, we believe AST SpaceMobile is poised for sustained growth as it executes its commercialization plan and ultimate expansion across the globe."

Transaction Overview

Pursuant to the transaction, New Providence, which currently holds approximately $232 million in cash in trust, will combine with AST SpaceMobile at an estimated $1.4 billion pro forma enterprise value, or 1.4 times calendar year 2024's estimated EBITDA of approximately $1 billion. The company will have no debt on the balance sheet at closing. Assuming no redemptions by New Providence's existing public stockholders, AST SpaceMobile's existing shareholders will hold approximately 71 percent of the issued and outstanding shares of common stock immediately following the closing of the business combination.

The combined company expects to receive up to $462 million in gross proceeds, assuming no redemptions of New Providence's existing public stockholders, including the private placement backed by strategic partners, existing investors and a broad base of financial institutions. All AST SpaceMobile shareholders are retaining 100% of their equity in the combined company. The cash proceeds are expected to be used to fund phase one of the commercial launch of AST SpaceMobile's space assets.

The transaction has been unanimously approved by the New Providence Board of Directors, as well as the Board of Directors of AST SpaceMobile, and is subject to the satisfaction of customary closing conditions, including the approval of the shareholders of New Providence.

Additional information about the proposed business combination, including a copy of the equity purchase agreement and investor presentation, will be provided in a Current Report on Form 8-K to be filed by New Providence today with the Securities and Exchange Commission and available at www.sec.gov. The investor presentation can also be found on AST SpaceMobile's website at https://ast-science.com/ and www.npa-corp.com.

. . .

Advisors

Barclays is acting as financial advisor and capital markets advisor to AST SpaceMobile. Barclays and Deutsche Bank Securities Inc. acted as placement agents to New Providence in connection with the PIPE offering. Deutsche Bank

Securities Inc. and BTIG LLC are acting as financial and capital markets advisors to New Providence.

Latham & Watkins LLP and Foley & Lardner LLP are acting as legal counsel to AST SpaceMobile, and Kirkland & Ellis LLP is acting as legal counsel to New Providence.

## II.    The Proxy Omits Material Information

22.    On January 27, 2021, Defendants filed the materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

The Misleadingly Incomplete Background of the Merger

23.    The Proxy contains a misleadingly incomplete summary of the events leading up to the Proposed Merger that omits material facts. Once a company travels down the road of partial disclosure of the history leading up to a merger, they had an obligation to provide shareholders with an accurate, full, and fair characterization of those historic events. Even a non-material fact can trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders.

24.    First, the Proxy states the Company reviewed over 420 target candidates in different industries and had substantive discussions with 52 potential targets, but fails to disclose the details concerning any of these discussions, including offers or valuations made. Such information is directly related to the decision to approve the Proposed Merger or seek a better deal. Thus, the omission of this information renders the summary of the process misleadingly incomplete.

25.    Second, the Proxy states that NPA executed non-disclosure agreements with the

potential acquisition targets (including AST), but fails to disclose whether such agreements contained standstills and/or "don't ask don't waive" ("DADW") provisions, including whether those provisions had fallen away upon the execution of the Equity Purchase Agreement or were still in effect.

26.     The express communication of the existence of such provisions is material to NPA shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal.  The failure to plainly disclose the existence of DADW provisions creates the false impression that any of the parties who signed non-disclosure agreements could have made a superior proposal. However, if those non-disclosure agreements contained DADW provisions, then those parties could only make a superior proposal by breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this material information renders the description of the non-disclosure agreements the Company entered into in the Background of the Merger section of the Proxy misleading.  Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

27.     Third, the Proxy states that in connection with the Proposed Merger, NPA executed a private placement agreement of Class A Common Stock in an aggregate amount of $230 million (the "PIPE Investment"). However, the Proxy fails to fully disclose the identity of the investors in the PIPE Investment. Such information is material to shareholders and must be disclosed.

28.     Fourth, the Proxy provides misleading reports of the percentage of the Combined Company (SpaceMobile) that will be retained by NPA common shareholders upon the completion of the Proposed Merger. The Proxy states that "the current holders of NPA Class A Common Stock

will hold shares of Common Stock representing 6% of the total voting power of SpaceMobile."

E.g., Proxy at 11. However, the Proxy also states that NPA's Public Stockholders will only retain

2.6% of the voting interests in SpaceMobile. E.g., Proxy at 17. The difference between these two

figures is substantial and requires clarification. With further explanation, NPA shareholders will

be misled with respect to what they expect to receive from the Proposed Merger.

29.     Accordingly, the omission and/or misrepresentation of this information renders the

summary provided in the Proxy misleading.

The Misleadingly Incomplete Information Regarding Financial Advisors' Roles and Conflicts

30.     The Proxy omits material information about the financial advisors, their

relationships, and their roles in the events leading up to the Proposed Merger.

31.     First, the Proxy omits BTIG's role as a financial advisor or their involvement with

the events leading up to the Proposed Merger. The Proxy also fails to state the historical

relationship between BTIG on the one hand, and the Company, the Individual Defendants, the

PIPE Investors, AST, or any affiliates thereof (specifically including but not limited to Abel

Avellan), on the other, including all compensation received or expected to be received from any

work performed.

32.     Second, the Proxy omits DB's role as a financial advisor or their involvement with

the events leading up to the Proposed Merger. The Proxy also fails to state the historical

relationship between DB on the one hand, and the Company, the Individual Defendants, the PIPE

Investors, AST, or any affiliates thereof (specifically including but not limited to Abel Avellan),

on the other, including all compensation received or expected to be received from any work

performed.

33.     Third, the Proxy states that Barclays acted both as the financial advisor for AST

and the advisor for the Company related to the PIPE Investment, but the Proxy fails to state the compensation Barclays received for acting as a financial advisor for either party, or the historical relationships between Barclays on the one hand, and the Company, the Individual Defendants, the PIPE Investors, AST, or any affiliates thereof (specifically including but not limited to Abel Avellan), on the other.

34.     Disclosure of any compensation received or to be received as a result of the relationship between a financial advisor and the company it advises, or its related affiliates, is required pursuant to federal securities regulations. Moreover, it is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its work or how much scrutiny to give the Proposed Merger. A reasonable shareholder would want to know what important economic motivations that the advisor might have.

35.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure.  Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

40.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the background of the Proposed Merger; and (ii) the financial advisors' conflicts of interest.

41.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

42.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that the financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided them.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Equity Purchase Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately

involved in the process leading up to the signing of the Equity Purchase Agreement.

44.     NPA is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

45.     The misrepresentations and omissions in the Proxy are material and Plaintiff will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of NPA's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of NPA within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or knowledge of the misleadingly incomplete statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the material statements that Plaintiff contends are incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

50.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Equity Purchase Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

56.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

57.     The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

58.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of NPA shareholders to vote on the Proposed Merger or

consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

        B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

        C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

        D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 5, 2021                  Respectfully submitted,

**MONTEVERDE & ASSOCIATES PC**

*/s/Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel: 212-971-1341
Fax: 212-202-7880

*Attorneys for Plaintiff*